**ORIGINAL**

# In the United States Court of Federal Claims

No. 13-45 C
(Filed: August 20, 2013)

**FILED**

**AUG 2 0 2013**

**U.S. COURT OF FEDERAL CLAIMS**

*************************************
                                      *
**CHRIS SCHAUGAARD**,                 *
                                      *
        Plaintiff,                    *
                                      *
v.                                    *
                                      *
**THE UNITED STATES**,                *
                                      *
        Defendant.                    *
                                      *
*************************************

*Chris Schaugaard*, Herriman, Utah, Plaintiff, pro se.

*Elizabeth Anne Speck*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for Defendant.

## OPINION AND ORDER

**DAMICH**, Judge:

On May 2, 2013, Defendant filed a motion to dismiss Plaintiff's action for lack of jurisdiction in this court. Defendant additionally argues that, because Plaintiff has received the equitable relief he has requested, his complaint therefore is moot.

Plaintiff's response to Defendant's motion was due June 3, 2013, but no response was received by the court by then. The court extended the time within which Plaintiff could file a response, but advised that, if Plaintiff intended to file a response to the Government's motion to dismiss, his response had to be received by the Court no later than June 28, 2013. The court further advised Plaintiff that, if no response was received by the due date as extended, the court would proceed with Defendant's motion to dismiss without further argument from Plaintiff.

On June 21, 2013, the court received an unsigned, one-page filing from Plaintiff, dated June 17, 2013, captioned in the name of this case, which the court will construe as Plaintiff's response to Defendant's motion to dismiss. The filing reflects Mr. Schaugaard's typed name at the bottom of the filing.

Plaintiff's response does not address either of Defendant's arguments on jurisdiction or mootness, but appears to be rather simply an expression of frustration with the Government.[1] Nonetheless, because the court agrees with Defendant's argument that this particular federal court – the United States Court of Federal Claims – lacks jurisdictional authority over Plaintiff's complaint, it has no choice but to grant Defendant's motion to dismiss. In addition, the court finds that Plaintiff's complaint is mooted by the fact that he was offered the equitable relief that he has sought in his complaint, that is, the opportunity to file a claim for a return of his funds at issue, and that he has in fact submitted such a claim.

I. Background

In 2008, Plaintiff invested $15,500 in an investment known as Ad Surf Daily ("ASD"). Compl. at ¶ 2. It was apparently a fraudulent investment and the United States Secret Service seized ASD assets in two civil actions. *Id.* at ¶ 2, 3. The Government retained a contractor, Rust Consulting, Inc. ("Rust"), to administer the remission of funds to victims of the ASD fraud. *Id.* at ¶ 5; Def.'s Mot. Dism. at 2.

Rust sent out notifications to ASD investors, including claim forms that were required to be filed by January 19, 2011. Compl. at ¶ 6. Plaintiff avers that he did not receive the notification and consequently did not submit a claim by the due date. *Id.* at ¶ 7. Subsequently, once he learned about the claims program, he filed a claim form with attachments regarding proof of his investment. *Id.* at ¶ 8.

In his complaint, filed January 17, 2013, Plaintiff alleges that he was "unfairly deprived of his right to the $15,500 because he was deprived of proper notification through no fault of his own." *Id.* at ¶ 9. He asserts that the United States Department of Justice "still controls the remaining undistributed funds seized from ASD." The complaint makes no specific claim for money damages, but rather "seeks equitable relief regarding his failure to file the ASD claim through no fault of his own." *Id.* at ¶ 10, 12.

In its motion to dismiss, the United States advises that, on March 29, 2013, Rust again permitted ASD investors to submit petitions for remission. Def.'s Mot. at 3. Pursuant to a notice to that effect, the deadline for receipt of such claims was April 28, 2013. *Id.* Defendant further advises that it sent Plaintiff an email with the information about his applying for a remission pursuant to the March 29, 2013, letter. *Id.* Defendant also states, "During our telephone conversation with Mr. Schaugaard, he confirmed that he had received the materials from Rust but stated that he did not wish to voluntarily dismiss his complaint." *Id.*

In its reply brief, the Government has submitted a copy of the remission form, signed by Plaintiff and dated April 18, 2013, by which Mr. Schaugaard has "actually petitioned the ASD fund for remission."

---

[1] For example, "The bottom line here is – the government took my money from me. The ASD company did not take my money. The government took it. So who is the bad guy here? To the government that question is irrelevant. They have power to take and so they do, not withstanding consequences that may occur to its victims."

II. Legal Standards

Whether a court has jurisdiction over the subject matter in a party's complaint is "a threshold question that must be resolved . . . before proceeding to the merits" of a claim. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88-89 (1998). When jurisdiction is challenged, the inquiry thus goes not to whether a plaintiff will ultimately prevail, but whether this court has jurisdiction to hear the matter in the first instance. *See Patton v. United States*, 64 Fed. Cl. 768, 773 (2005) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

In weighing a motion to dismiss for lack of subject-matter jurisdiction, the court is "obligated to assume all factual allegations to be true and to draw all reasonable inferences in [the] plaintiff's favor." *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995). Nevertheless, when this court's jurisdiction is challenged, it is the plaintiff's burden to demonstrate jurisdiction by a preponderance of the evidence. *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988).

When a party is acting *pro se*, courts generally accord the party greater leeway than if he or she had professional representation. *See, e.g., Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (requiring that allegations contained in a pro se complaint be held to "less stringent standards than formal pleadings drafted by lawyers"); *Forshey v. Principi*, 284 F.3d 1335, 1357 (Fed. Cir. 2002).

"While a court should be receptive to pro se plaintiffs and assist them," it must not, however, cross the line between finder of fact and advocate. *Demes v. United States*, 52 Fed. Cl. 365, 369 (2002). Moreover, "the leniency afforded to a *pro se* litigant with respect to mere formalities does not relieve the burden to meet jurisdictional requirements." *Minehan v. United States*, 75 Fed. Cl. 249, 253 (2007) (citing *Kelley v. Sec'y, U.S. Dep't of Labor*, 812 F.2d 1378, 1380 (Fed. Cir. 1987)).

III. Discussion

The subject matter jurisdiction of the United States Court of Federal Claims is established by the Tucker Act, 28 U.S.C. § 1491, which provides, in relevant part:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1).

The Tucker Act itself, however, "does not create substantive rights. Rather, it is a jurisdictional provision 'that operate[s] to waive sovereign immunity for claims premised on other sources of law (e.g., statutes or contracts).'" *Holmes v. United States*, 657 F.3d 1303, 1309 (Fed. Cir. 2011) (quoting *United States v. Navajo Nation*, 556 U.S. 287, 290 (2009)).

The Federal Circuit has explained that the substantive right must stem from another source of law, such as a "money-mandating constitutional provision, statute or regulation that has been violated, or an express or implied contract with the United States." *Loveladies Harbour, Inc. v. United States*, 27 F.3d 1545, 1554 (Fed. Cir. 1994). The "other source of law," however, "need not *explicitly* provide that the right or duty it creates is enforceable through a suit for damages, but it triggers liability only if it 'can fairly be interpreted as mandating compensation by the Federal Government.'" *Holmes*, 657 F.3d at 1309 (quoting *Navajo Nation*, 556 U.S. at 290).

In the facts of this case, Plaintiff asserts that the United States seized the assets of ASD, that the United States Department of Justice has sought to refund to investors their losses from those seized assets, and that Rust was retained to administer the remission program for victims of ASD's fraud. In its motion to dismiss for lack of jurisdiction, the Government argues, "Mr. Schaugaard's claim for money that is to be distributed to ASD investors fails to support Tucker Act jurisdiction because the asset forfeiture statutes do not mandate the payment of money damages by the United States." Def.'s Mot. at 5.

Mr. Schaugaard does not identify any grounds in his complaint for the court's jurisdiction over his claim. To the extent, however, that his claim may be seen as founded on the asset forfeiture statutes, the court concurs with Defendant that the pertinent statutes are not money-mandating and thus not adequately a basis for jurisdiction.

As Defendant notes, the Secret Service, a law enforcement agency of the United States Department of the Treasury, performed the seizure of ASD's assets. Pursuant to 18 U.S.C. § 981(e)(6), the Secretary of the Treasury is given the authority "to retain property forfeited pursuant to [the statute], or to transfer such property on such terms and conditions as he may determine." The distribution of such assets is governed by 31 U.S.C. § 9708, under which funds are deposited into the Department of Treasury Forfeiture Fund (TFF). To the extent within his discretion that the Secretary determines to transfer property forfeited under § 981 to any victim of the offense giving rise to the forfeiture, *see* § 981(e)(6); § 9703(a)(1)(E), the United States Attorney General, of the Department of Justice ("DOJ"), has the responsibility to rule on petitions for remission, such as at issue here. § 981(d).

The Court of Appeals for the Federal Circuit has characterized statutes providing for remissions of this sort as "money-authorizing," but not necessarily money-mandating. *See, e.g., Perri v. United States*, 340 F.3d 1337, 1341 (Fed. Cir. 2003); *see also Kuehne & Nagel, Inc. v. United States*, 17 Cl. Ct. 11, 19 (Cl. Ct. 1989); *Noel v. United States*, 16 Cl. Ct. 166, 171 (Cl. Ct. 1989); *Torres v. United States*, 15 Cl. Ct. 212, 217 (Cl. Ct. 1988). In *Perri*, the Federal Circuit emphasized that, because of the discretion afforded the Attorney General, "it would be difficult, if not impossible, to argue that" the subsection of the forfeiture statute at issue there "is a money-

mandating provision." *Perri*, 340 F.3d at 1342. This court agrees with Defendant that "[t]he same type of statutory scheme that was at issue in *Perri* applies in this case and precludes the Court from deciding Mr. Schaugaards claims." Def.'s Mot. at 6.

In addition, to the extent that Plaintiff's response to the Government's motion to dismiss may conceivably be construed as asserting either a takings claim under the Fifth Amendment to the Constitution or a claim of illegal exaction, he is similarly forestalled.[2] "'Items properly seized by the government under its police power are not seized for 'public use' within the meaning of the Fifth Amendment.'" *Acadia Technology, Inc. v. United States*, 458 F.3d 1327, 1332 (Fed. Cir. 2006) (quoting *Seay v. United States*, 61 Fed. Cl. 32, 35 (2004)); *see also Ramos v. United States*, No. 12-859 C, 2013 WL 3943525, at *5-6 (Fed. Cl. August 1, 2013). Similarly, an illegal exaction "involves money that was 'improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation.'" *Norman v. United States*, 429 F.3d 1081, 1095 (Fed. Cir. 2005) (quoting *Eastport S.S. Corp. v. United States*, 178 Ct. Cl. 599, 372 F.2d 1002, 1007 (1967)). Here, however, Plaintiff makes no allegation that the Government's seizure of ASD's assets was improper or taken in violation of any statute, regulation, or provision of the Constitution. Accordingly, a contention of illegal exaction, even if it were made, would also fail to state a claim for which relief could be granted under the facts alleged in the complaint.

IV.   Conclusion

The court finds therefore that it lacks jurisdiction over Plaintiff's complaint. In addition, it also evident that the complaint has been mooted by the fact that he has received the relief – the opportunity to submit a claim seeking remission of his investment in the ASD fraudulent investment scheme – that he has requested.[3]

Defendant's motion to dismiss is granted and the Clerk of Court is directed to enter judgment accordingly.

*[signature]*
EDWARD J. DAMICH,
Judge

---

[2] Mr. Schaugaard articulates no such claims in his complaint and only seeks equitable relief. Nevertheless, in his vague response to Defendant's motion to dismiss, Plaintiff avers, "the government took my money from me . . . I want my money back! The government has no right to my money."

[3] The court also notes Mr. Schaugaard's mistaken entry on his April 8, 2013, claim form that this litigation "was dismissed" in March or April of this year.